UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
ROSA GENNA,

                Plaintiff,                      **MEMORANDUM & ORDER**

        - against -                            19-CV-6878 (PKC)

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
----------------------------------------------------------x

PAMELA K. CHEN, United States District Judge:

      Plaintiff Rosa Genna brings this action under 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration's ("SSA") denial of her claim for Disability Insurance Benefits ("DIB"). The parties have cross-moved for judgment on the pleadings. (Dkts. 9, 10.) For the reasons set forth below, the Court grants Plaintiff's motion for judgment on the pleadings, denies the Commissioner's cross-motion, and remands the case for further proceedings consistent with this Memorandum and Order.

## BACKGROUND

      On May 5, 2016, Plaintiff filed an application for DIB, claiming that she had been disabled since June 16, 2014. (Tr. 10, 72–73.)[1] The claim was initially denied on August 12, 2016. (Tr. 10, 82.) After her claim was denied, Plaintiff requested a hearing on September 19, 2016, and appeared for a video hearing before an administrative law judge ("ALJ") on August 2, 2018. (Tr. 10, 90; *see also* Tr. 30–71.) By decision dated October 16, 2018, ALJ David Suna found that Plaintiff was not disabled within the meaning of the Social Security Act from June 16, 2014, her

---

[1] All references to "Tr." refer to the consecutively paginated Administrative Transcript. (Dkt. 8.)

alleged onset date, through the date of the decision. (Tr. 7–20.) On December 10, 2018, Plaintiff requested a review of the ALJ's decision (Tr. 148–50), which the Appeals Council denied on October 4, 2019 (Tr. 1–3). Based upon this denial, Plaintiff timely[2] filed this action seeking reversal or remand of the ALJ's October 16, 2018 decision. (*See generally* Complaint, Dkt. 1.)

## DISCUSSION

A district court reviewing a final decision of the Commissioner must "determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Cichocki v. Astrue*, 729 F.3d 172, 175–76 (2d Cir. 2013) (per curiam) (quoting *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008)). If there is substantial evidence in the record to support the Commissioner's factual findings, they are conclusive and must be upheld. 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla," and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted). But regardless of whether substantial evidence supports the Commissioner's findings, a court may not affirm "where an error of law has been made that might have affected the disposition of the case."

---

[2] Section 405(g) provides that

> [a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

42 U.S.C. § 405(g). "Under the applicable regulations, the mailing of the final decision is presumed received five days after it is dated unless the claimant makes a reasonable showing to the contrary." *Kesoglides v. Comm'r of Soc. Sec.*, No. 13-CV-4724 (PKC), 2015 WL 1439862, at *3 (E.D.N.Y. Mar. 27, 2015) (citing, *inter alia*, 20 C.F.R. §§ 404.981, 422.210(c)). Applying this standard, the Court determines that Plaintiff received the Commissioner's final decision by October 9, 2019. Because Plaintiff filed the instant action on December 6, 2019—58 days later—it is timely. (*See generally* Complaint, Dkt. 1.)

*Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (alteration omitted) (quoting *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)). "[L]egal error alone can be enough to overturn the ALJ's decision." *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

Plaintiff argues that the ALJ's determination of Plaintiff's residual functional capacity ("RFC") is unsupported by substantial evidence because the ALJ gave improper weight to the medical opinion of consultative examiner Dr. Yousif Abdel-Jawad and impermissibly substituted his own judgment for that of competent medical opinion. (Plaintiff's Memorandum of Law, Dkt. 9-1, at 12–20.) For the reasons stated below, the Court concludes that there are "inadequacies in the ALJ's analysis [that] frustrate meaningful review," and remand is therefore necessary. *See Cichocki*, 729 F.3d at 177.

To start, the ALJ failed to make clear the medical basis supporting his determination of Plaintiff's RFC. Although an ALJ's RFC determination "need not perfectly correspond to any one medical assessment as long as it is supported by the record as a whole," *Tricarico v. Colvin*, 681 F. App'x 98, 101 (2d Cir. 2017) (summary order), "an ALJ is not a medical professional, and 'is not qualified to assess a claimant's RFC on the basis of bare medical findings,'" *Lawton v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 378, 383 (W.D.N.Y. 2019) (quoting *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018)). "[I]t is well-settled that 'the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion[.]'" *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (quoting *McBrayer v. Sec'y of Health & Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983)); *see also Lawton*, 351 F. Supp. 3d at 383 ("An ALJ is prohibited from playing doctor in the sense that an ALJ may not substitute his own judgment for competent medical opinion." (internal quotation marks and citation omitted)). "Because an RFC determination is a medical determination, an ALJ

3

who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his or her own opinion for that of a physician, and has committed legal error." *Collins v. Berryhill*, No. 16-CV-6673 (PKC), 2018 WL 259282, at *8 (E.D.N.Y. Jan. 2, 2018) (alteration omitted) (quoting *Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 347 (E.D.N.Y. 2010)).

Here, the ALJ recited the medical findings in the record, including Plaintiff's "history of lumbar spine degenerative disc disease, bilateral knee meniscus tears and obesity" (Tr. 15), her results from various physical examinations between 2014 and 2018 (Tr. 15–16), and her diagnosis of diabetes mellitus along with associated diagnoses of diabetic retinopathy and peripheral neuropathy (Tr. 16–17). These findings largely came from records submitted by Plaintiff's chiropractor, Dr. Denny Julewicz; consultative examiners Dr. Emmanuel Gelin and Dr. Abdel-Jawad; and Plaintiff's endocrinologist, Dr. Shahed Quyyumi. (*See* Tr. 15–17; *see also* Tr. 214–17, 274–76, 298–656, 659–72.) After setting forth these findings, however, the ALJ proceeded to discount every medical opinion in the record, giving only "some weight" or "little weight" to each of them. (*See* Tr. 17.) Notably, even though the ALJ gave "some weight" to Dr. Quyyumi's opinion that Plaintiff "could perform postural and manipulative tasks, as long as it was not for prolonged periods," the ALJ afforded "less weight" to Dr. Quyyumi's overall opinion because, in the ALJ's view, Dr. Quyyumi's findings were "somewhat generalized and non-specific." (*Id.*) In particular, the ALJ gave "[l]ittle weight" to Dr. Quyyumi's assessment that Plaintiff should be considered permanently disabled in light of Plaintiff's physical limitations combined with her uncontrollable Type I diabetes and "multiple diabetes complications." (*See* Tr. 17; *see also* Tr. 333.) The ALJ accordingly concluded as follows with respect to Plaintiff's RFC:

> Given [Plaintiff]'s cervical and lumbar spine degenerative disc disease, bilateral knee meniscus tear, and obesity, the record supports limiting [Plaintiff] to sedentary

4

> work with the aforementioned postural and environmental limitations due to trouble standing, walking and sitting for prolonged periods. Given [Plaintiff]'s diabetic retinopathy and neuropathy, the record supports the aforementioned visual and manipulative limitations. Also, because of [Plaintiff]'s need to injection [*sic*] insulin multiple times a day and to adjust her position due to discomfort, the undersigned finds the record supports off task time of ten percent and up to one unscheduled absence per day. Lastly, given [Plaintiff]'s asthma and use of an inhaler, the undersigned finds the record supports the environmental limitations pertaining to irritants, humidity, wetness, and extreme heat and cold.

(Tr. 17–18.) Thus, the ALJ's analysis on its face indicates that the ALJ's determination of Plaintiff's RFC was based not on any competent medical opinion in the record, but on the ALJ's own judgment and assessment of the bare medical findings. The ALJ was not permitted to make such a medical determination. *See Balsamo*, 142 F.3d at 81; *Lawton*, 351 F. Supp. 3d at 383; *Collins*, 2018 WL 259282, at *7–8.

The Court recognizes that "where application of the correct legal principles to the record could lead to only one conclusion, there is no need to require agency reconsideration." *Johnson*, 817 F.2d at 986 (citing *Havas v. Bowen*, 804 F.2d 783, 786 (2d. Cir. 1986)). But this is not such a case, particularly given some of the medical opinions that the ALJ discounted to arrive at Plaintiff's RFC determination. First, to arrive at the determination that Plaintiff could perform sedentary work with "no more than occasional balance and stooping," the ALJ gave "little weight" to consultative examiner Dr. Abdel-Jawad's opinion that Plaintiff "was limited to a reduced range of sedentary work with no stooping." (*See* Tr. 14, 17; *see also* Tr. 654.) The ALJ discounted this opinion on the grounds that "it appear[ed] to be a recitation of [Plaintiff]'s self-reported symptoms instead of Dr. [Abdel-]Jawad's assessment of [Plaintiff's] capabilities" and that it was, in the words of the ALJ, "internally inconsistent" with Dr. Abdel-Jawad's evaluation that Plaintiff "demonstrated a normal range of motion in the spine, full power in the upper and lower extremities, and only a slight decreased range of motion in the right knee and wrist." (Tr. at 17.) The Court

5

cannot fathom the basis for the ALJ's characterization of Dr. Abdel-Jawad's opinion. It is true that Dr. Abdel-Jawad's medical report at times includes statements made by Plaintiff. (*See, e.g.*, Tr. 649.) Yet, in finding Plaintiff unable to stoop, crouch, or crawl, Dr. Abdel-Jawad specifically noted that Plaintiff suffers from "pain in the knees." (Tr. 654.) This is consistent with Dr. Abdel-Jawad's examination of Plaintiff and observation that Plaintiff had a decreased range of motion in her right knee, which "ha[d] a brace on it due to her previous injuries." (Tr. 651.) Dr. Abdel-Jawad also observed that Plaintiff wore a brace on her right wrist "because of [a] sprain." (*Id.*) Even if Dr. Abdel-Jawad's opinion was based on Plaintiff's self-reported symptoms, the ALJ provides no reason or explanation as to why Plaintiff lacks credibility such that the ALJ could or should discount Dr. Abdel-Jawad's opinion in favor of the ALJ's own assessment and judgment of the medical evidence. *Cf. Hilsdorf*, 724 F. Supp. 2d at 350 ("Although it is the function of the Commissioner and not the reviewing court to evaluate a claimant's credibility, a 'finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record.'" (quoting *Williams v. Bowen*, 859 F.2d 255, 260–61 (2d Cir. 1988))). Where the Court is "'unable to fathom the ALJ's rationale in relation to evidence in the record, especially where credibility determinations and inference drawing is required of the ALJ,' [the Court] will not 'hesitate to remand for further findings or a clearer explanation for the decision.'" *Cichocki*, 729 F.3d at 177 (quoting *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982)).

Second, the Court cannot find that the ALJ properly followed SSA regulations in assessing the opinion of Dr. Quyyumi, Plaintiff's endocrinologist. Curiously, the ALJ gave "some weight" to Dr. Quyyumi's opinion that Plaintiff could perform postural and manipulative tasks for short periods of time, yet the ALJ gave "little weight" to Dr. Quyyumi's overall opinion that Plaintiff's

physical limitations combined with her uncontrollable Type I diabetes, which has led to multiple complications such as diabetic retinopathy and neuropathy, rendered Plaintiff permanently disabled. (Tr. 17; *see also* Tr. 298, 333.) As the ALJ recognized, Dr. Quyyumi and Plaintiff have "a treatment relationship" (Tr. 17), and this relationship dates back to 2008 or 2009 (*see* Tr. 184, 347). There is no indication, however, that the ALJ properly applied the treating physician rule, which provides that a treating source's medical opinion on the nature and severity of a claimant's impairments will be given "controlling weight" if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *See* 20 C.F.R. § 404.1527(c)(2).[3] When a treating source's opinion is not afforded controlling weight, "SSA regulations require the ALJ to consider several factors in determining how much weight the opinion should receive," and "the ALJ must comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (per curiam) (alteration in original) (internal quotation marks omitted) (quoting *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008)); *see also* 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion."). As the Second Circuit has said, federal courts "do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) (per curiam).

Here, the extent of the ALJ's reasoning for discounting Dr. Quyyumi's opinion regarding the effects of Plaintiff's diabetes—which, as an endocrinologist, Dr. Quyyumi is most qualified to

---

[3] Because Plaintiff filed her claim for DIB on May 5, 2016, before the SSA's new regulations took effect on March 27, 2017, the treating physician rule applies in this case. *See* 20 C.F.R. §§ 404.1520c, 404.1527.

7

make—is that the opinion is "conclusory and do[es] not include a function-by-function assessment of [Plaintiff]'s abilities. Furthermore, Social Security regulations relegate determinations of disability to the discretion of the Commissioner." (Tr. 17.) In other words, it appears that the ALJ disregarded Dr. Quyyumi's opinion because it ultimately concludes that Plaintiff "should therefore be considered permanently disabled" (*see* Tr. 17, 333), treating Dr. Quyyumi's opinion simplistically as a "determination[] of disability" that should be made by the Commissioner (*see* Tr. 17). However, the ALJ's approach ignores the rest of Dr. Quyyumi's opinion, which explains that Plaintiff "has had Type I diabetes since she was a child," that this diabetes "has always been very difficult to control," and that Plaintiff "has multiple diabetes complications including proliferative diabetic retinopathy requiring laser photocoagulation, peripheral sensory neuropathy[,] and asthma." (Tr. 333.) Elsewhere, Dr. Quyyumi opined that Plaintiff suffers from "severe proliferative retinopathy needing laser photocoagulation." (Tr. 340.) The ALJ provides no "good reasons," based on the factors enumerated in the SSA's regulations, for discounting Dr. Quyyumi's opinion regarding the effects of Plaintiff's long struggle with diabetes, *see* 20 C.F.R. §§ 404.1527(c)(2)–(6), and the ALJ fails to explain how his determination that Plaintiff is able to perform sedentary work requiring "frequent depth perception" (Tr. at 14) is consistent with Dr. Quyyumi's findings and opinion, or other competent medical opinion in the record. This amounts to the ALJ impermissibly "substitut[ing] his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion." *Greek*, 802 F.3d at 375 (citing *Burgess*, 537 F.3d at 131).

In short, "there is a reasonable basis for doubt whether the ALJ applied correct legal principles," and there exists "an unacceptable risk" in this case that Plaintiff has been "deprived of the right to have her disability determination made according to the correct legal principles."

8

*Johnson*, 817 F.2d at 986. Remand for further proceedings and development of the record is therefore warranted. *See id.*; *see also Cichocki*, 729 F.3d at 177.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for judgment on the pleadings is granted, the Commissioner's cross-motion is denied, and the Commissioner's decision denying Plaintiff disability insurance benefits is remanded for further consideration consistent with this Memorandum and Order. The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 28, 2021
       Brooklyn, New York